**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **CHARLES T. ZUFFANTE,** | ) | |
| **Petitioner,** | ) | |
| **vs.** | ) | **No. 3:13-CV-1146-B (BH)** |
| | ) | |
| **WILLIAM STEPHENS, Director,** | ) | **Referred to U.S. Magistrate Judge** |
| **Texas Department of Criminal** | ) | |
| **Justice, Correctional Institutions Division,** | ) | |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to Special Order 3-251, this case has been referred for findings, conclusions, and recommendation. Based on the relevant findings and applicable law, the petition for writ of habeas corpus under 28 U.S.C. § 2254 should be **DENIED** with prejudice.

## I. BACKGROUND

Charles T. Zuffante (Petitioner) challenges his conviction for theft in Cause F08-25940. The respondent is William Stephens, Director of TDCJ-CID (Respondent).

### A. Factual and Procedural History

On December 17, 2008, the State indicted Petitioner for theft of copper tubing and copper wire under $20,000 from David Clark on or about November 28, 2008. (Clerk's Record ("C.R."):2-3). Prior to trial, the State provided notice that it intended to enhance the available punishment range with two prior felony convictions. *Id*. at 19. Petitioner pled not guilty and was tried before a jury in Criminal District Court No. 2 of Dallas County on April 6-7, 2009. *Id*. at 4-5. The state appellate court recounted the evidence at trial as follows:

> The incident giving rise to this case occurred at the site of an apartment complex being demolished to make way for a tollway extension. Clark was an engineer with an engineer firm performing general consulting with the North Texas Tollway Authority. He was responsible for the demolition project and had negotiated the

contracts with the demolition companies to demolish the buildings and salvage materials such as copper wiring. Despite no-trespassing signs, there had been thefts of copper from the apartments.

On November 28, 2008, about mid-morning, a tow truck driver, John Castle, saw an individual, later identified as appellant, going up and down the stairs of the apartment complex and disappearing like he might have been entering apartments. Castle called the police. Garland police officers Robert McDonald and Jason Lambert responded to a dispatch about a theft in progress at the site. Appellant ran away when he saw them (they were in full police uniform and in a marked squad car), but the officers apprehended him.

McDonald testified appellant was "rough looking" and "dirty." Appellant had sheetrock dust on him, and his hands were "filthy." McDonald handcuffed and searched him and found a multipurpose screwdriver with a flashlight on one end, pliers with copper residue, some brass fittings, and a small pocketknife; these items were offered as State's Exhibit 14, which was the subject of a pretrial motion to suppress and admitted over objection. Lambert also testified that appellant's hands were dirty, and there was sheetrock residue and copper residue (Lambert agreed it was "orange discoloration") on his hands, his person, and the articles on his person. They testified that State's Exhibits 1 through 4 showed orange coloration on appellant's hands.

Lambert said he investigated apartments 107 and 207 (up- and downstairs apartments) that were "being systematically stripped of copper wiring and pipe." He found pliers and tools used to remove the copper. Appellant was arrested after the search of the apartments. Castle testified he saw police officers carrying boxes of copper and tools from an apartment, and he "saw the copper in the boxes." He later looked inside the complex and saw doors kicked in and breaker boxes and air-conditioning units ripped off the walls. He agreed it looked like a "systematic copper theft."

Lambert testified that State's Exhibits 7 through 13 were photographs of items found in apartments 107 and 207. State's Exhibit 7 was a photograph of a bag containing tools; one was a saw which appeared to have a sheetrock residue. Lambert explained that "copper wiring" was like "electrical wiring"–in the casing it was covered in plastic and rubber, but outside the casing "it's essentially just raw copper." State's Exhibit 10 was a photograph of a box the

2

officers collected from apartments 107 and 207; Lambert testified it contained copper wire still in its casing, among other items. State's Exhibit 13 was a photograph of another box containing copper wiring and copper pipe; the box was found in apartment 207 by the door. State's Exhibits 11 and 12 were close-up photographs of the contents of the box in State's Exhibit 13, showing the copper pipe and the copper wire after it was stripped, bound, and bundled.

Castle and Clark testified to their observations of the material's copper content....Appellant did not testify.

*Zuffante v. State*, 2011 WL 1169250, No. 05-09-00417-CR, slip op. at *1-2 (Tex. App.–Dallas, March 31, 2011, pet. ref'd). The jury found Petitioner guilty, he pled true to the two enhancements and the jury sentenced him to eight years' imprisonment. (C.R.:32; R. 5:59, 92).

On direct appeal, Petitioner alleged that the evidence was insufficient to support his conviction, and that the trial court erred in denying his motion to suppress, admitting certain testimony into evidence, and denying a hearing concerning the admissibility of expert testimony. *Williams*, slip op. at *1. Petitioner's conviction was affirmed on direct appeal. *Id*. at 1. Petitioner's petition for discretionary review (PDR) was refused on September 14, 2011. *See* PD-0938-11. He did not file a petition for writ of certiorari with the Supreme Court.

Petitioner mailed his state habeas application on October 30, 2012, in which he asserted that: 1) the trial court erred in permitting lay people to testify about the copper content of the wire; 2) the appellate court misconstrued appellate counsel's argument regarding the need for expert testimony on the issue of copper content; 3) the evidence was insufficient to support his conviction of theft of a substance that was at least 50% copper; and 4) the trial court erred in denying the defense motion to suppress items seized from him after he was detained and searched. (State Habeas Transcript "S.H.Tr." at 7-13). On February 20, 2013, the Court of Criminal Appeals denied the state writ without a written order. *Id*. at cover.

Petitioner mailed his petition for federal habeas relief in this case on March 12, 2013. (Pet. at 10).  Respondent filed a response on July 24, 2013, and furnished the state records.  Petitioner's reply brief was received August 21, 2013.  On September 9, 2013, he filed a second federal petition challenging the same conviction that was opened as a separate case, Cause No. 3:13-CV-3220-B (N.D.Tex.).  It was consolidated with this case, and the second petition was construed as a supplement to the petition in this case. (*See* docs. 26, 27).  Respondent filed a supplemental response on November 12, 2013.

**B.**   **Substantive Claims**

Petitioner raises the following claims for relief in his initial and supplemental petitions:

–the police officer who detained and searched him violated the Fourth Amendment because there was no reasonable suspicion that he was armed or dangerous to the officer's safety (ground one);

–his due process rights were violated because the trial court did not issue findings of fact and conclusions of law regarding the motion to suppress and did not submit a jury instruction regarding the legality of the seizure (ground three);

–the evidence is insufficient to support his conviction (ground four; supplemental ground two);

–trial counsel was ineffective by failing to: 1) have an expert testify regarding the copper content; 2) hire a private investigator; 3) re-urge the request for a hearing on the motion to suppress; and 4) request a jury instruction regarding the legality of the seizure (ground two);

–appellate counsel was ineffective by failing to file a motion for new trial (ground two); and

–the appellate court misconstrued appellate counsel's argument regarding the need for expert testimony (supplemental ground one).

## II.  APPLICABLE LAW

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. 104-132, 110 Stat. 1217, on April 24, 1996.  Title I of the Act applies to all federal petitions for

habeas corpus filed on or after its effective date.  *Lindh v. Murphy*, 521 U.S. 320, 326 (1997).

Because Petitioner filed his petition after its effective date, the Act applies.

Title I of AEDPA substantially changed the way federal courts handle habeas corpus actions.

Under 28 U.S.C. § 2254(d), as amended by AEDPA, a state prisoner may not obtain relief

> with respect to any claim that was adjudicated on the merits in State court pro-
> ceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unrea-
> > sonable application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determin-
> > ation of the facts in light of the evidence presented in the State court
> > proceeding.

"In the context of federal habeas proceedings, a resolution (or adjudication) on the merits is a term

of art that refers to whether a court's disposition of the case was substantive, as opposed to proced-

ural."  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000).

Section 2254(d)(1) concerns pure questions of law and mixed questions of law and fact.

*Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).  A decision is contrary to clearly established fed-

eral law within the meaning of § 2254(d)(1) "if the state court arrives at a conclusion opposite to that

reached by [the Supreme Court] on a question of law or if the state court decides a case differently

than [the] Court has on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S.

362, 412-13 (2000).  As for the "unreasonable application" standard, a writ must issue "if the state

court identifies the correct governing legal principle from [the] Court's decisions but unreasonably

applies that principle to the facts of the prisoner's case."  *Id.* at 413; *accord Penry v. Johnson*, 532

U.S. 782, 792 (2001).  Likewise, a state court unreasonably applies Supreme Court precedent if it

"unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." 529 U.S. at 407.   "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409; *accord Penry*, 532 U.S. at 793.

Section 2254(d)(2) concerns questions of fact. *Moore v. Johnson*, 225 F.3d 495, 501 (5th Cir. 2000).   Under § 2254(d)(2), federal courts "give deference to the state court's findings unless they were 'based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.'"   *Chambers v. Johnson*, 218 F.3d 360, 363 (5th Cir. 2000).   The resolution of factual issues by the state court is presumptively correct and will not be disturbed unless the state prisoner rebuts the presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

### III.  PROCEDURAL BAR

A.   <u>Search and Seizure Claim</u>

Respondent asserts that Petitioner's first ground for relief, asserting an unconstitutional search and seizure, is procedurally barred because it was fully litigated at the state court level. (Response at 10-12).

It is well-settled that a claim that evidence obtained pursuant to an unconstitutional search and seizure was admitted at trial cannot be a basis for federal habeas relief if the state provided an opportunity for a full and fair litigation of the Fourth Amendment claim. *Williams v. Taylor*, 529 U.S. 362, 375 (2000); *Stone v. Powell*, 428 U.S. 465, 482 (1976).   A full and fair hearing contemplates that where there are factual disputes, the matter must be considered by the original

fact-finding court, and there must be meaningful appellate review available even if unused. *See Davis v. Blackburn*, 803 F.2d 807, 808 (5th Cir. 1986). The Fifth Circuit has also stated that a Fourth Amendment claim has been fully and fairly litigated in state court where the material facts were adequately developed in state court and there is no undeveloped evidence sufficient to call into question the reliability of the state court's determination. *Andrews v. Collins*, 21 F.3d 612, 631 (5th Cir. 1994); *Streetman v. Lynaugh*, 812 F.2d 950, 958 (5th Cir. 1987).

Here, this issue was raised at the trial level through a pretrial motion to suppress and an objection at trial, (C.R.:7-8, R. 4:26-29), on direct appeal, *Zuffante v. State*, slip op. at *7-10, and at the state habeas level, (S.H.Tr.:12-13). Petitioner has not alleged any undeveloped facts sufficient to call into question the reliability of the state court's determination. He relies on the record from trial and contends that the search was illegal because the police officer did not have any reasonable suspicion of wrongdoing or danger to himself. This issue was fully and fairly litigated at the state level, and Petitioner's first ground is therefore barred from review here.

**B.     Trial Error and Ineffective Assistance Claims**

Respondent contends that Petitioner has failed to exhaust his second and third grounds for relief, in which he asserts trial error and ineffective assistance of counsel, because he did not raise these claims before the Court of Criminal Appeals in either his PDR or his state habeas application, and that they are procedurally barred. He also argues that the claims lack merit. Because it appears that Petitioner is entitled to no habeas relief on the allegedly unexhausted claims, the Court bypasses the procedural issue and proceeds to the merits of the claim. *See* 28 U.S.C. § 2254(b)(2) (providing that the Court may deny a habeas petition on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); *Jones v. Jones*, 163 F.3d 285, 299 (5th

Cir. 1998) (reaffirming pre-AEDPA law that "when, as in this case, exhaustion is not waived, courts have the 'discretion in each case [under § 2254(b)(2)] to decide whether the administration of justice would be better served by insisting on exhausting or by reaching the merits of the petition forthwith'"); *Logan-Gates v. Quarterman*, No. 3:08-CV-1683-B, 2009 WL 3614481, slip op. at *7 (N.D. Tex. Oct. 29, 2009) (recognizing that "the district courts may deny habeas relief for procedurally defaulted claims" in lieu of deciding the issue of procedural bar).

## IV.  TRIAL ERROR

Petitioner asserts in his third ground for relief that the trial court erred in failing to issue specific findings of fact regarding the denial of the motion to suppress, and in failing to submit an instruction on the constitutionality of the search and seizure to the jury.  (Pet. at 7).

Federal habeas proceedings do not afford review of a state court's interpretation of its own law.  *Charles v. Thaler*, 629 F.3d 494, 500 (5th Cir. 2011); *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998).  Instead, a petitioner is entitled to federal habeas relief due to trial error only if such error is not harmless within the meaning of *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993), because "the error 'had substantial and injurious effect or influence in determining the . . . verdict.'" (citation omitted).

> [U]nder *Brecht*, a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is more than a mere reasonable possibility that it contributed to the verdict.  It must have had a substantial effect or influence in determining the verdict.  We recognize, however, that if our minds are "in virtual equipoise as to the harmlessness," under the *Brecht* standard, of the error, then we must conclude that it was harmful.

*Mayabb v. Johnson*, 168 F.3d 863, 868 (5th Cir. 1999) (quoting *Woods v. Johnson*, 75 F.3d 1017, 1026-27 (5th Cir. 1996)).  To be entitled to federal habeas relief due to a trial error, petitioner must show that the error actually prejudiced him.  *Brecht*, 507 U.S. at 637.

Petitioner has shown no trial error, much less prejudice,  Under Texas law, the trial court is required to issue findings of fact and conclusions of law regarding its ruling on a motion to suppress if timely requested by the non-prevailing party. *State v. Cullen,* 195 S.W.3d 696, 699 (Tex. Crim.

8

App. 2006); *State v. Oages,* 210 S.W.3d 643, 644 (Tex. Crim. App. 2006). Trial counsel did not request specific findings, so the trial court did not err in failing to issue findings.

As for the jury instruction regarding the search and detention of Petitioner, a defendant is entitled to a jury instruction under state law if there is a fact issue regarding the legality of his detention. *Holmes v. State,* 248 S.W.3d 194, 199–200 (Tex. Crim. App. 2008) (citing TEX. CODE CRIM. PROC. ANN. art. 38.23 (West 2005)). Here, there was no fact issue on Petitioner's detention because he did not testify at trial. The arresting officer testified that he detained Petitioner when he began to run away after looking towards the officers, and then he searched him for weapons and contraband. (R. 4:21-29). There were no controverting facts on this issue. Both the trial court and the state appellate court ruled that as a matter of law, Petitioner's flight created reasonable suspicion that he had committed a crime, thereby justifying his detention, and that the officer was justified in searching Petitioner to protect his safety. *See Zuffante*, slip op. at *9-10. Petitioner has failed to demonstrate any trial error. His third ground for relief is without merit and should be denied.

## V.  SUFFICIENCY OF THE EVIDENCE

In his fourth and second supplemental grounds for relief, Petitioner asserts that the evidence is insufficient to support his theft conviction. In particular, he claims that there was no physical evidence to support his conviction, and that the witnesses who testified regarding the content of the copper wiring did not have a sufficient knowledge of the subject. (Pet. at 7; Supp. Pet. at 6).

Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, under the standard set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson,* the Supreme Court held that the correct standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 320. The trier of fact has the responsibility of weighing the evidence, resolving conflicts in testimony, and drawing reasonable inferences from basic facts to ultimate facts. *Id.*

9

Further, under *Jackson*, "the assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). "Determining the weight and credibility of the evidence is within the sole province of the jury." *United States v. Martinez*, 975 F.2d 159, 161 (5th Cir. 1992). Courts view "any required credibility determinations in the light most favorable to the guilty verdict." *United States v. Wise*, 221 F.3d 140, 154 (5th Cir. 2000). They do not "second-guess[] the weight or credibility given the evidence." *United States v. Ramos-Garcia*, 184 F.3d 463, 465 (5th Cir. 1999). The *Jackson* standard applies whether the evidence is direct or circumstantial. *United States v. Scott*, 159 F.3d 916, 920 (5th Cir. 1998).

Here, Petitioner was indicted for the theft of copper tubing and copper wire under $20,000 in value. (C.R.:2). The jurors were instructed, pursuant to state law, that before finding him guilty, they must believe beyond a reasonable doubt that he appropriated insulated or non-insulated wire that consisted of at least 50% copper under the value of $20,000. (C.R.:20). On direct appeal, the state appellate court ruled that the evidence was legally sufficient to support Petitioner's conviction. In particular, it found that while Clark's testimony was insufficient evidence that the copper wire consisted of at least 50% copper, Castle testified about his experience handling and hauling copper wire at a scrap metal business. Castle further testified that the copper at issue was electric wiring identical to copper he has handled and hauled, and that in his experience, that wiring has over 50% copper. The court held that Castle's testimony was some evidence that the wiring was at least 50% copper and therefore supported the verdict. *Zuffante*, slip op. at *7.

Petitioner asserts that there was insufficient evidence of the percentage of copper contained in the wiring because Castle's knowledge came only from his experience of hauling copper. The state appellate court noted that it was undisputed at trial that the wiring was copper, and the issue was the percentage of copper contained in the wiring. Because Castle had experience hauling and disposing of copper wiring, he was able to testify based on this experience that the copper at issue at Petitioner's trial was the exact type of copper he has handled in the past, which is above 50% copper content. Therefore, his testimony supported the verdict. *Zuffante*, slip op. at *6. This

analysis is not an unreasonable application of the *Jackson* standard. Viewed in the light most favorable to the guilty verdict, there was sufficient evidence to support all of the elements of theft. Petitioner's fourth and second supplemental grounds for relief are without merit and should be denied.

## VI. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In his second ground for relief, Petitioner claims that his trial counsel was ineffective for failing to: 1) have an expert testify regarding the copper content; 2) hire a private investigator; 3) re-urge the request for a hearing on the motion to suppress; and 4) request a jury instruction regarding the legality of the seizure

The Sixth Amendment to the United States Constitution provides in relevant part that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel, both at trial and on appeal. *Strickland v. Washington*, 466 U.S. 668 (1984); *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced his or her defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective. *See* 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. "The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691. To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *Williams v. Taylor*, 529 U.S. 362, 393

n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair).  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent counsel's alleged errors.  *Strickland*, 466 U.S. at 695-96.

A.      <u>Failure to call Expert Witness</u>

        Petitioner asserts that trial counsel was ineffective for failing to call an expert witness to testify regarding the copper content of the wiring he took from the construction site.  He appears to suggest that with expert testimony, there is a reasonable probability that he would not have been convicted.

        Complaints of uncalled witnesses are not favored in habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy, and because allegations of what a witness would have stated are largely speculative.  *Day v. Quarterman*, 566 F3d 527, 538 (5th Cir. 2009).  To prevail on an ineffective assistance claim based on counsel's failure to call a witness, a petitioner must name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense.  *Day v. Quarterman*, 566 F3d at 538; *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985).  Petitioner has failed to meet this burden.

        Petitioner has pointed to no proposed expert witness, available to testify at his trial, who would have testified that the copper wiring had less than 50% copper content, the amount required to support his conviction as charged.  He fails to demonstrate that the wiring had less than 50% copper content.  Defense counsel made the reasonable decision to argue that the State should be required to prove the content of the wiring through expert testimony.  Petitioner has not demonstrated that this was deficient performance.  Counsel was not ineffective in this regard.

B.      <u>Private Investigator</u>

        Petitioner further asserts in a conclusory manner that his attorney was ineffective for failing to hire a private investigator.  He has neither alleged nor shown what further investigation should

have been done or what it would have accomplished.  *See Harrington v. Richter*, 131 S.Ct. 770, 789–90 (2011) ("An attorney need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense.")  Petitioner has therefore not demonstrated that there is a reasonable probability that the result would have been different had a private investigator been hired. Counsel was not ineffective in this regard.

**C.     Motion to Suppress and Jury Instruction**

Finally, Petitioner asserts that trial counsel was ineffective for failing to re-urge his request to have a separate hearing on his motion to suppress.  Trial counsel made this request, and it was denied. (R. 4:6-7).  Petitioner has not demonstrated that any additional request would have been granted or would have benefitted him.

Petitioner also asserts that his attorney was ineffective for failing to request that the trial court issue findings of fact and conclusions of law regarding the denial of the motion to suppress. Petitioner has not demonstrated prejudice because he has not shown that if he had, there is a reasonable probability that his conviction would have been reversed on appeal.  Under state law, when a criminal defendant challenges a trial court's denial of a motion to suppress on appeal, the appellate court reviews the trial court's ruling for an abuse of discretion.  *Turrubiate v. State,* 399 S.W.3d 147, 150 (Tex. Crim. App. 2013).   The appellate court grants almost total deference to a trial court's determinations of historical facts.  *Id.*  When the trial court enters no findings of fact, the appellate court views the evidence in the light most favorable to the trial court's ruling and implies all necessary findings of fact that are supported by the record.  *Turrubiate,* 399 S.W.3d at 150 (citing *State v. Kelly,* 204 S .W.3d 808, 818–19 (Tex. Crim. App.2006)).  Because the appellate court implies all necessary findings when specific ones are not made by the trial court, Petitioner has not demonstrated that the review of this issue on appeal would have been any different.  The testimony of the arresting officer was not in dispute, and based on it, the appellate court determined that there was reasonable suspicion to detain Petitioner based on his presence in the apartment complex and his flight from the police.  The appellate court also determined that the search for

13

potential weapons was warranted to ensure the officer's safety.  Petitioner has shown no reasonable probability that this result would have been different.  His claims of ineffective assistance of trial counsel are without merit and should be denied.

### VII.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

In his second ground for relief, Petitioner asserts that appellate counsel was ineffective by failing to file a motion for new trial. (Pet. at 7).

The federal constitution guarantees a criminal defendant the effective assistance of counsel on appeal.  *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  Whether appellate counsel has been ineffective is also determined by using the standard enunciated in *Strickland*.  Under *Strickland*, Petitioner must show a reasonable probability that but for his counsel's deficient representation, he would have prevailed on his appeal.  *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

To render effective assistance of counsel, appellate counsel need not raise every non-frivolous issue on appeal.  *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'"  *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688).  "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful.  Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted).   To determine whether appellate counsel was deficient, courts must consider whether the challenge "would have been sufficiently meritorious such that [counsel] should have raised it on appeal."  *Phillips*, 210 F.3d at 348.

The record reflects that trial counsel filed a general motion for new trial with the trial court. (C.R.:36).  Petitioner does not assert what specific issue should have been raised in a motion for new trial filed by appellate counsel.  Appellate counsel raised numerous grounds for relief that were addressed at some length.  Petitioner has failed to demonstrate either deficiency or prejudice in appellate counsel's representation.  This claim is without merit and should be denied.

14

## VIII.  APPELLATE COURT

Finally, in his first supplemental ground for relief, Petitioner asserts that the appellate court misconstrued counsel's argument when it stated that appellate counsel had agreed that Clark and Castle were not testifying as expert witnesses. (Supp. Pet. at 6).  *See Zuffante*, slip op. at  *10-11. Appellate counsel argued in his brief and at oral argument that expert testimony was necessary to determine the copper content at trial. (Supp. Pet. at 6).  This claim was denied on its merits at the state habeas level. (S.H.Tr.:cover).  This denial is not contrary to federal law.

The Fifth Circuit has held that a federal habeas court is authorized to under § 2254 to review a state court's decision, not its written opinion explaining the decision.  *Vaccaro v. Stephens*, 2014 WL 1712270, *1 (5th Cir. May 1, 2014), *citing Neil v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). Counsel argued at trial that Clark and Castle should not be permitted to give testimony regarding the copper content of the wire without demonstrating a basis for an expert opinion on the subject pursuant to the Texas Rules of Evidence. (R. 4:68, 70; R. 5:16).  The trial court overruled his objections and permitted the witnesses to testify based on their experience without demonstrating that they were experts in the field of copper analysis.  The state appellate court determined that Clark and Castle were not testifying as experts, and that while Clark's testimony was insufficient evidence of the copper content, Castle's testimony was some evidence of the copper content that supported the verdict.  He testified that the copper at issue was electric wiring identical to copper he had handled and hauled at a scrap metal business, and in his experience, that wiring has over 50% copper.  It has already been determined that this analysis was not an unreasonable application of the *Jackson* standard.

To the extent that Petitioner is asserting that the trial court erred in overruling the defense objections and declining to require expert testimony, this Court does not sit in judgment of a state court's interpretation of its own law. *Creel v. Johnson*, 162 F.3d 385, 395 (5th Cir. 1998), *cert. denied*, 526 U.S. 1148 (1999); *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995).  This ground is without merit and should be denied.

15

## IX.  EVIDENTIARY HEARING

Upon review of the pleadings and the proceedings held in state court as reflected in the state court records, an evidentiary hearing appears unnecessary.

## X.  RECOMMENDATION

The request for habeas corpus relief pursuant to 28 U.S.C. § 2254 should be **DENIED** with prejudice.

**SIGNED on this 12th day of May, 2014.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

16